# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JONATHAN DAVID WILKE,<br><br>                Plaintiff,<br><br>v.<br><br>CHARLES E. COLE, WELCOME T. ROSE,<br>CHARLES FACKTOR, JAMES GREER,<br>BRIAN FOSTER, ROBERT HUMPHREYS,<br>DYLAN RADTKE, CAPTAIN BUTEYN,<br>TOBY WATSON, RANDY SMITH,<br>MICHELLE WILINSKI,<br>KELLY A. SALINAS,<br>WILLIAM MCCREEDY, NURSE HAU,<br>MICHAEL BELONGIA,<br>SUSAN EWERDT-JOSEPH,<br>GARY H. HAMBLIN, and<br>WISCONSIN DEPARTMENT OF<br>CORRECTIONS,<br><br>                Defendants. | Case No. 12-CV-1231-JPS<br><br><br><br><br><br><br>ORDER |

On December 4, 2012, plaintiff Jonathan David Wilke ("Wilke") commenced this civil action by filing a prisoner complaint. (Docket #1). Subsequently, the court granted Wilke's motion for leave to file an amended complaint, causing an amended complaint, the operative complaint in this action, to be filed. (Dockets #23, #24). The matter comes before the court on cross-motions for summary judgment. (Dockets #26, #34).

Before the court can adjudicate the motions for summary judgment, the court must first resolve two procedural motions involving some of the defendants' filings. Wilke filed his materials in opposition to the defendants' motion for summary judgment on December 13, 2013. (Dockets #59-#65). Pursuant to this district's Civil Local Rule 56(b)(3), the defendants were required to file any materials in reply "within 14 days of service" of Wilke's

materials in opposition; in this case, the deadline was December 27, 2013. Defendants did not meet this deadline; they filed their reply briefing one week late on January 3, 2014. (Dockets #66-#70). Wilke filed a motion to strike the defendants' reply briefing, and defendants filed a motion asking the court to accept the filings. (Dockets #71, #74).

Pursuant to Rule 6 of the Federal Rules of Civil Procedure, a court may grant a motion to extend a deadline filed after the deadline has passed if the party missed the deadline due to "excusable neglect." Fed. R. Civ. Pro. 6(b)(1)(B). The determination of whether a party's neglect is excusable is "at bottom an equitable one" and courts consider factors like "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993).

In this particular instance, the court finds that the defendants' neglect was excusable. First, Wilke filed his materials in opposition before his deadline, thereby moving up the defendants' reply deadline. According to the defendants' motion, counsel for the defendants was out on medical leave when Wilke filed, and she neglected to realize the effect of the early filings, namely that her deadline also moved up. Additionally, the filing was delayed one day due to computer problems. While both of these reasons are certainly "within the reasonable control" of defense counsel, the court finds that the cause of the short delay was primarily counsel's medical condition, and that defense counsel acted in good faith. Furthermore, the court finds that the delay of a few days was not, in this instance, prejudicial to Wilke, and does not impact judicial proceedings. The reply briefs are the last step in briefing

the defendants' motion for summary judgment; the fact that the court received them a few days later than it should have did not have any ripple effect on Wilke because there was nothing left for Wilke to do. That said, the court does not take filing deadlines lightly, and defense counsel, who litigate regularly in this branch of the court, are admonished that the court will not excuse further missed deadlines. However, in this case, an equitable examination of the circumstances of the short delay and the factors articulated by the United States Supreme Court in *Pioneer Inventory Services*, cited above, yield a finding that the delay was the product of excusable neglect. The court will, therefore, grant the defendants' motion asking the court to accept the late filings, and deny Wilke's motion to strike.

1.  Facts[1]

The facts of the case are relatively simple. Wilke was confined at Kettle Moraine Correctional Institution ("KMCI") at all times relevant to this action.[2] In his lawsuit, Wilke alleges that defendants violated the Americans with Disabilities Act ("ADA") when they failed to reasonably accommodate his disability, paruresis or "shy bladder," when requiring him to give a urine sample and when he was placed in the institution's segregation unit.

Paruresis is a type of phobia, classified as a "Social Anxiety Disorder" or "Social Phobia" in the Diagnostic and Statistical Manual of Mental Disorders (DSM-V and DSM-IV). Typically the cause is viewed as psychological or mental. It simply means that the sufferer is unable or finds

---

[1]Facts contained in this section are established in the parties' proposed findings of facts, responses, and replies thereto. (Dockets #29, #35, #36, #61, #62, #63, #67, #68, #70).

[2]Wilke has since been transferred to federal custody, and is currently confined at the Federal Correctional Institution in Oxford, Wisconsin. (Docket #78).

it physically and psychologically difficult or even painful to urinate in the real or imaginary presence of others, and in turn, experiences anxiety.

The practice at KMCI is that nurses and psychologists do not make the final diagnosis of paruresis. If an inmate complains of paruresis, a medical examination and possibly testing is required to rule out an underlying medical issue. When an inmate claims he has paruresis, staff from the Health Service Unit ("HSU") will meet with him to conduct an initial assessment. Staff from the Psychological Service Unit ("PSU") will make an initial diagnosis of "Social Phobia-Specific Paruresis (by self report)." This initial self-reported diagnosis alerts other PSU staff that the inmate has made the initial claim of the disorder and follow-up may be needed as they seek PSU services. Treatment services are offered, but it is the responsibility of the inmate to request and engage in treatment. PSU staff is available to meet individually with the inmate to clarify the nature of his phobia and may engage in systematic desensitization interventions or practice skill-based techniques.

The Wisconsin Department of Corrections ("DOC") performs drug testing of inmates to protect the public and provide a drug free and safe environment for staff and inmates. There is zero tolerance for drug use in DOC facilities. There is no specific accommodation policy for inmates with paruresis housed in a segregation unit, but there are general drug testing accommodation rules that may apply. When an inmate claims they have paruresis, security contacts PSU and grants the inmate an automatic accommodation for drug testing. This allows the inmate to urinate in a "dry cell," a cell without water or other inmates. Additionally, if an inmate was actively engaged in treatment, had no, very few, or explainable conflicting reports of symptoms and history of the disorder (from self-report and based

upon collateral reports), had engaged HSU, and is not reporting improvement, PSU may make recommendations to security after consultation with the treatment team that a single cell placement be offered to accommodate the inmate's psychological need. In such a case, treatment would continue to be implemented and the special accommodation would be reviewed periodically and on an as-needed basis and in consultation with the providing therapist or medical practitioner.

When Wilke is double-celled with another inmate in segregation, it is very difficult for him to urinate and he has to force himself to do so, causing pain in his bladder. Wilke describes the pain as being "very similar to constipating." Beginning in March of 2011, Wilke submitted a Health Services Request ("HSR") complaining of "shy bladder" when asked to urinate in front of others. An HSU nurse met with Wilke and provided suggestions for overcoming the issue. In May of 2011, Wilke requested an accommodation for drug testing, citing paruresis. Wilke's request was denied. Over the course of years, Wilke requested psychological services for his paruresis, and also requested accommodations for the drug testing procedure and for a single cell while he was housed in the segregation unit. In those years, Wilke had several contacts with staff from the HSU and PSU. Wilke's requests for accommodations were, for the most part, denied. Beginning in June 2011 and continuing to October 2012, Wilke engaged KMCI's grievance process nine times, seeking a single cell in segregation or seeking accommodation in UA testing. After Wilke's complaints were denied or dismissed, Wilke filed this lawsuit.

2. Legal Standard

The general standard for assessing motions for summary judgment applies, namely: "The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

3. Analysis

Presently before the court are two motions for summary judgment: one filed by the defendants and one filed by the plaintiff. For the reasons that follow, the court concludes that neither party has shown their entitlement to summary judgment in this case. As such, both motions will be denied.

    3.1    Defendants' Motion for Summary Judgment

Defendants first argue that there is no consensus as to whether paruresis qualifies as a mental disability under the ADA. Defendants do not articulate the definition of a disability under the ADA, and they do not apply the facts of the case to the ADA definition. Instead, this section of the defendants' brief summarizes cases involving paruresis, mostly arising under the Eighth Amendment, without explaining their relevance to the case at hand. One of this section's rare moments of advocacy—and it has nothing to do with whether paruresis is a disability under the ADA—is a citation to *Jenkins v. Yates*, 2012 WL 6088289 at \*3 (E.D. Cal. 2012), for the proposition that "[t]he ADA will only permit accommodations if they assist the prisoner in taking advantage of some program or benefit." This is a bare misreading of the court's reasoning in *Jenkins*. There, the district court held only that a prisoner's complaint that he did not receive adequate medical treatment is

not cognizable as an ADA claim; the court did not reason that an ADA claim requires denial of participation in a program or benefit.

In any event, the argument defendants present does not rise to the level of persuading the court of their entitlement to summary judgment on the basis that paruresis is not a disability under the ADA.

Defendants next argue that, even assuming that paruresis is a disability, Wilke has not demonstrated that the DOC violated his rights under the ADA. In this section of their brief, defendants refer the court to *Mulligan v. Kenney*, 2010 WL 101535 (W.D. Wash. 2010), stating that it is the "case most on point." The case is essentially irrelevant. First off, the procedural posture of the case in *Mulligan* was a motion for preliminary injunction, which, of course, requires assessment of immediate irreparable injury in the absence of an injunction. Whether Wilke faces any forward-looking injury is not an issue of this case. Second, while the plaintiff in *Mulligan* alleges an ADA violation, the court's analysis focuses on his Eighth Amendment claim.

Defendants also argue that it is "imperative for an inmate to be properly diagnosed by a qualified medical professional before a court will find an ADA violation." For support, defendants cite *Carey v. Arizona Dept. of Corrections*, 2010 WL 148211 (D. Ariz. 2010) and *Meeks v. Tennessee Dept. of Correction*, 2010 WL 3522977 (M.D. Tenn. 2010). Neither case stands for the cited proposition. In *Carey,* one expert mentions the question of the diagnosis, but diagnosis hardly plays a part in the court's final analysis. In *Meeks*, the court notes the necessity of diagnosis under the Tennessee Department of Correction's policies, and notes that the diagnosis satisfies the ADA; the court does not reason that a diagnosis was required under the ADA. Indeed, the ADA explicitly does not require a specific diagnosis in every case; the statute

itself includes in its definition of disability merely "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(C).

Finally, defendants argue that Wilke "has been his own worst enemy" because he filed grievances and complaints, but did not consistently follow up with HSU or PSU for their services. First off, defendants cite no legal authority that would support summary judgment on this ground. Second, the record is replete with Wilke's efforts, sustained over years, to be accommodated for drug tests and while in segregation. Defendants conclude by citing the existing policies allowing single-cell placement in segregation, and by noting that HSU and PSU never deemed single-cell placement necessary in Wilke's case. The mere existence of legally-compliant policies do not exempt defendants from liability, and the question of whether HSU and PSU employees should have deemed single-cell placement necessary is precisely the question of this case.

The defendants filed a motion for summary judgment and, as movants, bore a burden to prove that there are no material facts at issue, and that the party is entitled to judgment as a matter of law. Fed. R Civ. Pro. 56. For the reasons stated above, the defendants plainly did not meet this burden and, thus, their motion must be denied.

3.2     Plaintiff's Motion for Summary Judgment

As plaintiff in this case, Wilke bears the burden of proving that the defendants violated the ADA. "To establish a prima facie case for failure to accommodate, 'a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the [defendant] was aware of his disability; and (3) the [defendant] failed to reasonably accommodate the disability.'" *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (*quoting Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011)). As movant for summary

judgment, Wilke bears the burden of showing that there are no material facts at issue, and that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. Pro. 56. The court concludes that there are material facts at issue with regard to whether Wilke is a "qualified individual with a disability" and whether Wilke's requested accommodation was reasonable. As such, the court is obliged to deny his motion.

The assessment of whether an individual is disabled within the meaning of the ADA is extremely fact-specific. First, a disability is defined as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). Although the Seventh Circuit has not definitively stated that the elimination of waste is either itself a major life activity, or essential to other major life activities such as caring for one's self, it has recognized that other circuits have so ruled. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010) *(citing Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 255 (4th Cir. 2006) (holding that the elimination of bodily waste is a major life activity under the ADA); *Workman v. Frito–Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999) (holding that controlling one's own bowels can be a major life activity)). But even answering the question of whether paruresis can substantially limit a major life function, and therefore constitute a disability for purposes of the ADA, in the affirmative, there remains the question of whether Wilke's paruresis was so limiting. Not all impairments or conditions qualify as a disability within the meaning of the ADA. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005). To be disabled, "an individual must be so limited in one or more major life activities that [he] is impaired in [his] ability to 'perform the variety of tasks central to most people's lives.'" *Id.* (*quoting Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 201 (2002)). A person is "substantially limited"

in a major life activity when he is "[s]ignificantly restricted as to the condition, manner or duration under which he can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii); *see also Turner v. The Saloon, Ltd.*, 595 F.3d 679, 689 (7th Cir. 2010). On this record, plaintiff has not established that he meets this definition, and neither has defendant shown that plaintiff will not be able to meet this definition. A trier of fact will have to assess the record on this point.

Second, and independently adequate to deny plaintiff's motion, the court finds that plaintiff has not shown that the defendants violated the law when they denied his requests for an accommodation. "The reasonableness of a requested accommodation is a question of fact." *Haschmann v. Time Warner Ent. Co., L.P.*, 151 F.3d 591, 601 (7th Cir. 1998) (*citing Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996)). Similar to the element above, plaintiff has not established entitlement to summary judgment on this issue, nor has defendant shown that plaintiff cannot prove this at trial.

Accordingly, plaintiff's motion for summary judgment will be denied and the matter will proceed to trial. A comprehensive trial scheduling order is forthcoming from the court.

Accordingly,

IT IS ORDERED that Wilke's motion for summary judgment (Docket #26) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that defendants' cross-motion for summary judgment (Docket #34) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Wilke's motion to strike (Docket #71) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that defendants' motion to accept late filings for excusable neglect (Docket #74) be and the same is hereby GRANTED.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge